UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PREN NOTHNAGEL, | ) | No. C 12-5976 CW (PR) |
| Petitioner, | ) | ORDER DENYING PETITION FOR A |
| | ) | WRIT OF HABEAS CORPUS |
| v. | ) | |
| | ) | |
| CLIFF ALLENBY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION

Petitioner seeks federal habeas relief from his civil detention under California's Sexually Violent Predator Act (SVPA), California Welfare and Institutions Code sections 6600-04, as amended in 2006 by SB1128 and Proposition 83. For the reasons set forth below, the petition for such relief is DENIED.

BACKGROUND

Petitioner is civilly committed at Coalinga State Hospital as a sexually violent predator (SVP). An SVP is an individual "who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or

she will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a).

In March 2009, a Humboldt County Superior Court jury found true a petition that Petitioner, who was then sixty-five years old, is an SVP.  The trial court committed him to an indeterminate term in a facility to be designated by the California Department of Mental Health (DMH).  Pet. at 2; Ans., Ex. A at 326.

Evidence presented at his civil commitment trial included the testimony of two psychologists, Drs. Jeremy Coles and Craig Updegrove.  The two interviewed Petitioner, reviewed his criminal history, which included five criminal convictions for committing lewd and lascivious behavior with a child, and evaluated his risk of reoffending.

Petitioner's criminal history is as follows.  In 1975, Petitioner approached several eight- and nine-year-old boys and began masturbating in front of them.  He had one of the boys touch his penis.  Petitioner was consequently convicted of two counts of loitering where children were present.  Ans., Ex. J, Vol. 4 at 812-13.

In 1978, Petitioner was arrested for masturbating in front of children in a park.  He plead guilty to indecent exposure and was placed on probation.  Id. at 813.

In 1991, Petitioner befriended eleven-year-old Cody, gave him candy and pornography, and, over a matter of several months,

United States District Court
For the Northern District of California

engaged in masturbation, oral copulation, and sodomy.  On one occasion, Petitioner tied the child up.  He threatened to "hunt down" and kill Cody if he told anyone.  Id. at 814; Ex. A at 26. Petitioner was convicted of five counts of lewd and lascivious conduct with a child and sentenced to sixteen years in prison. Id., Ex. A at 6.

In 2006, Petitioner, then sixty-two, approached several young boys and asked if they wanted to see pornography.  The boys ran away and reported the incident.  Petitioner plead guilty to one count of attempting to annoy or molest a child and was sentenced to two years in prison.  Id., Ex. J., Vol. 4 at 817-18; Pet., Ex. 2A.  Coles and Updegrove evaluated his risk of reoffending using actuarial risk formulas, one of which was the Static 99.  They gave Petitioner a score of eight and seven (out of a possible twelve), respectively.  Both scores indicate "high risk of reoffending."  Ans., Ex. J, Vol. 4 at 828-29; Vol. 5 at 957.

Coles and Updegrove also considered Petitioner's age.  They rejected the idea that his age was a protective factor in lowering his risk of reoffending.  Id., Vol. 4 at 822.  Though they acknowledged that he did not actually molest anyone in 2006 when he was 62 years old, they noted that he exhibited the same "MO" as he had in prior offenses.  Id. at 818.  Also, because Petitioner has denied committing any sexual offenses and rejected the idea that he needs treatment, the doctors were not convinced that he

United States District Court
For the Northern District of California

would voluntarily seek treatment if released.  Id. at 836.

Based on this and other evidence, both Coles and Updegrove testified at the 2009 commitment proceeding that Petitioner had pedophilia and was likely to engage in sexually violent predatory criminal acts as a result of this disorder.  Id.  The doctors further explained that pedophilia is a chronic condition that individuals can manage, but that it can never go into remission. Id. at 821.

Petitioner, who represented himself at trial, presented the testimony of two psychologists, Drs. James Park and Otto Vanoni. Both also diagnosed pedophilia.  Id. at 667; Vol. 5 at 1027. However, Dr. Park believed Petitioner's pedophilia was in remission.  Id., Vol. 4 at 668.  Both doctors concluded that he did not have a high risk of reoffending in a sexually violent predatory manner if released.  Id. at 670; Vol. 5 at 1030.  They also found his age to be a significant protective factor because the likelihood of reoffending drops dramatically after the age of sixty.  Id., Vol. 4 at 659; Vol. 5 at 1030.  They also were convinced Petitioner's 2006 offense was not indicative of the desire to reoffend; rather, it was simply a "stupid" offense with no evidence supporting the desire to molest.  Id., Vol. 4 at 667-68; Vol. 5 at 1029.  Petitioner and his doctors asserted that he had gained empathy and an understanding about the effects of his

4

offenses on the victims.  Id., Vol. 4 at 672; Vol. 5 at 1031.

The jury, as noted above, found that Petitioner was an SVP.
He appealed his 2009 civil commitment judgment.  In 2010, the
state appellate court affirmed in part, reversed in part, remanded
the case to the trial court for consideration of Petitioner's
equal protection claim, but stayed the trial court proceedings
until the state supreme court decided People v. McKee, 207 Cal.
App. 4th 1325 (2012).  Ans., Ex. E.  The state supreme court
denied his petitions for review and for habeas corpus.  Id., Exs.
G and I.

In 2011, he filed a federal habeas petition, which this Court
dismissed without prejudice to refiling after the state supreme
court decided McKee.  When McKee became final, Petitioner refiled
his federal petition.

Petitioner raises twenty-seven claims for federal habeas
relief.  These fall into five categories:  (I) challenges to the
constitutionality of the SVPA; (II) challenges to prior
convictions; (III) sufficiency of the evidence; (IV) specific
trial errors; and (V) Sixth Amendment claims.

STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of
1996 (AEDPA), a district court may not grant a petition
challenging a state conviction or sentence on the basis of a
claim that was reviewed on the merits in state court unless the

state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law

erroneously or incorrectly." Id. at 411.  Rather, the

application must be "objectively unreasonable" to support

granting the writ.  Id. at 409.  Under 28 U.S.C. § 2254(d)(2),

a state court decision "based on a factual determination will not

be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court

proceeding." Miller-El, 537 U.S. at 340; see also Torres v.

Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

DISCUSSION

I.   Constitutionality of the SVPA

Petitioner claims that the SVPA violates the (A) ex post

facto, (B) double jeopardy, (C) due process, (D) excessive bail,

and (E) equal protection clauses.[1]  The state appellate court

rejected Claims A, B, and C: "the SVPA does not contravene due

process, ex post facto, or double jeopardy principles."  Ans.,

Ex. E at 1.  The state supreme court summarily denied all claims,

including the one regarding bail.  Id., Ex. G.

A.   Ex Post Facto

---

[1] Petitioner asserts that the SVPA discriminates against low income offenders.  Pet. at 16.  It is true that one of the evidentiary considerations in determining civil commitment is whether the defendant possessed the necessary resources to undertake treatment voluntarily. Ghilotti v. Superior Court, 27 Cal. 4th 888, 929 (2002).  Petitioner's claim is without merit.  In Petitioner's case, his prior offenses and responses to current evaluations were far more powerful factors in his detention than his income.  The state court's rejection of this claim was reasonable and is therefore entitled to AEDPA deference. Accordingly, this claim is DENIED.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Petitioner claims that the 2006 changes to the SVPA violate the ex post facto clause by eliminating the biannual judicial proceeding previously required to extend an SVP's commitment. Pet. at 5-6.

The ex post facto clause applies only to punishment for criminal acts, whether punishment for an act not punishable at the time it was committed, or punishment additional to that then prescribed. <u>Collins v. Youngblood</u>, 497 U.S. 37, 42 (1990). To determine what constitutes punishment in an ex post facto claim analysis, the Supreme Court has applied the double jeopardy "intent-effects" test set out in <u>United States v. Ward</u>, 448 U.S. 242, 248-49 (1980); <u>see also Smith v. Doe</u>, 538 U.S. 84, 92 (2003). The two-pronged <u>Ward</u> test requires that the Court inquire (1) whether the legislature intended to impose punishment and, if not, (2) whether the sanction is so punitive in purpose or effect as to negate the state's intent to deem it civil. <u>Smith</u>, 538 U.S. at 92. The Court may reject the legislature's intent under the second "effects" prong only where there is "the clearest proof" to support such a finding. <u>Id.</u>

The SVPA is a non-punitive statute under the initial intent prong of the <u>Ward</u> test. First, the SVPA is placed within the California Welfare and Institutions Code, rather than California's criminal code, differentiating it from the state's laws intended to punish criminal acts. Second, language in Proposition 83 described the SVPA as designed to "commit and

8

control" as opposed to "punish."  Ballot Pamp., Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2(h), p. 127.  The people of California approved Proposition 83 in 2006, amending the SVPA and thus expressing their intent that it serve as a civil commitment statute rather than as a mechanism to punish criminal conduct.

Under the second Ward prong, the SVPA's effects are not so punitive as to overcome the Act's civil intent.  In assessing a law's effects, the Court shall consider the following test:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence — whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963).  The most relevant factors of this test are "whether, in its necessary operation, the regulatory scheme has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  Smith v. Doe, 538 U.S. 84, 97 (2003).

Consideration of these factors indicates that the SVPA's effect is non-punitive.  First, while the SVPA involves an affirmative disability or restraint, civil commitment of sexually

9

violent predators has been historically regarded as a legitimate non-punitive governmental objective.  <u>Kansas v. Hendricks</u>, 521 U.S. 346, 363 (1997).

Second, the SVPA cannot be said to serve the penological purpose of deterrence or retribution.  It does not deter because commitment is contingent on the inability to control sexually violent urges.  The threat of commitment is not likely to deter SVPs from sexually violent crime because they, by definition, cannot control their impulses.  Also, the SVPA commitment is based on a currently "diagnosed mental disorder" rather than a finding of scienter.  Cal. Welf. & Inst. Code § 6600(a)(1), (c).  This lack of a scienter requirement in the SVPA suggests that the statute is not intended to promote the penological purpose of retribution.

Finally, the duration of an SVPA commitment is both related to the Act's rehabilitative purpose and not excessive because commitment is conditional upon a current mental disorder.  <u>Id.</u> §§ 6605, 6608.  The former may not continue without the latter.  In sum, consideration of the relevant <u>Mendoza-Martinez</u> factors strongly indicates that the SVPA's effects are civil.

It is important to note that the United States Supreme Court denied a habeas challenge in circumstances similar to those presented by Petitioner.  In <u>Hendricks</u>, the Supreme Court upheld a Kansas civil commitment statute under the <u>Ward</u> "intent-effects" test.  The Court reasoned that the potential for indefinite

10

United States District Court
For the Northern District of California

confinement showed the rehabilitative, rather than punitive, purpose of the statute. Hendricks, 521 U.S. at 361-62. In addition, the Court found that the statute did not have a retroactive effect because confinement was conditioned upon a determination that the person was currently suffering from a mental disorder. Id. The SVPA mirrors the Kansas statute in that there is a potential for indefinite confinement but the commitment lasts only so long as the detainee suffers from an ongoing, diagnosed mental disorder.

Accordingly, the state court's rejection of Petitioner's ex post facto claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

B.   Double Jeopardy

Petitioner claims that the SVPA violates the double jeopardy clause, arguing that "saying [civil] detention is not punishment because it is civil is a farce." Pet. at 10.

Habeas relief is not warranted here. Conduct may be subject to both a criminal penalty and a separate civil remedy without running afoul of the double jeopardy clause's prohibition on multiple criminal punishments for the same offense. Hudson v. United States, 522 U.S. 93, 99 (1997). In Hendricks, the Supreme Court rejected a double jeopardy claim because the challenged statute was based on "the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others." Hendricks, 521 U.S. at

11

363.

Also, the lack of an annual review in California's SVPA alone does not alter its non-punitive nature.  Duration and purpose of confinement under the SVPA are analogous to that of the statute upheld in Hendricks because commitment lasts only as long as the SVP is a threat.  Id. at 348.

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, Petitioner's double jeopardy claim is DENIED.

C.   Due Process

Petitioner claims that the SVPA violates his due process rights because "all it takes for the D.A. to win is [to] rehash past sexual crimes," annual reviews are just "rubber stamps" based on prior sexual conduct, there "is no realistic hope of gaining freedom from the 'treatment' at Coalinga State Hospital," and SVP trials are "kangaroo courts where everyone knows the outcome before the trial begins."  Pet. at 13, 15, and 27.  He also claims that the SVPA violates his substantive due process rights.  Id. at 5.

Habeas relief is not warranted here.  First, Petitioner's allegations are conclusory.  Rather than posing general allegations, a federal habeas petition "is expected to state facts that point to a real possibility of constitutional error."  Mayle v. Felix, 545 U.S. 644, 655 (2005) (internal quotation marks and citation omitted).  Conclusory allegations, such as

United States District Court
For the Northern District of California

those, are not sufficient.

Second, the allegations contain no showing that Petitioner's due process rights were violated. He does not allege, for instance, that he did not receive notice or an opportunity to respond, or that the state failed to follow the proper statutory procedures. SVPA procedural safeguards include a requirement that the accused receive diagnoses from two psychiatrists or psychologists, assistance of counsel, trial by jury on proof beyond a reasonable doubt, and a unanimous verdict. Hubbart v. Knapp, 379 F.3d 773, 781 (9th Cir. 2004); Cal. Welf. & Inst. Code §§ 6602, 6604. The record indicates that all the proper procedures were followed and the appropriate evidentiary standards were used.

Third, Petitioner's allegations that the process is only a rubber stamp and a "rehash" of prior offenses is not accurate. In fact, the Act "precludes commitment based solely on evidence of . . . prior crimes." Hubbart v. Superior Court, 19 Cal. 4th 1138, 1163-64 (1997). Petitioner's detention was based on many factors, including evaluations by mental health professionals, his age, and his prior offenses.

Fourth, his allegations regarding treatment are conclusory. He fails to point to specific facts about treatment and how it is ineffective or why success is unrealistic. Also, this claim is foreclosed by Supreme Court precedent: "we have never held that the Constitution prevents a State from civilly detaining those

for whom no treatment is available, but who nevertheless pose a danger to others." Hendricks, 521 U.S. at 366.

Fifth, his substantive due process claim is foreclosed by Hendricks. In that case, the Supreme Court rejected such a challenge to a Kansas state statute similar to the SVPA:

> lack of volitional control, coupled with a prediction of future dangerousness, adequately distinguishes Hendricks from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings. Hendricks' diagnosis as a pedophile, which qualifies as a "mental abnormality" under the Act, thus plainly suffices for due process purposes.

Id. at 360.

The state court's rejection of these claims was therefore reasonable and is entitled to AEDPA deference.  Petitioner's due process claims are DENIED.

D.   Excessive Bail

Petitioner's claim that bail was excessive under the Eighth Amendment is DENIED. Pet. at 11.  The custody that is subject to challenge in this federal habeas proceeding is not the state court's bail order because that order was rendered moot by Petitioner's subsequent civil commitment as an SVP.  Petitioner can now only challenge the proceeding that resulted in his subsequent custody.  See 28 U.S.C. § 2254(a).  The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.

E.   Equal Protection

14

Petitioner claims that the SVPA violates his right to equal protection because "sex offenders have a lower recidivism rate than any other criminals except murderers." Because it lacks a rational basis, the Act "creates an arbitrary and capricious class of persons." Pet. at 5.

The equal protection clause prohibits the arbitrary and unequal application of state law, "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

Petitioner's claim fails as a matter of law because he does not identify persons who are similarly situated, such as other civil detainees. His comparison of SVPs to criminals is inapt. Civil and criminal detention are different by definition, as shown in the Court's discussion of his ex post facto claim in Section I.A.

Furthermore, even if Petitioner had identified similarly situated persons (such as other civil detainees), his equal protection claim is foreclosed by Ninth Circuit precedent. "[T]he Sexually Violent Predator Act does not create a capricious custody scheme in violation of equal protection tenets." Taylor v. San Diego County, 800 F.3d 1164, 1170 (9th Cir. 2015).

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference. This claim is DENIED.

II.  Prior Convictions

15

**United States District Court**
For the Northern District of California

1    Petitioner challenges his 2006 conviction for attempting to

2    annoy or molest a child.  He asserts that he was given no warning

3    of a possible future SVP commitment when he plead guilty in 2006;

4    an indefinite civil detention is disproportionate to the crime he

5    committed in 2006; and that his 2006 arrest was a "springboard"

6    for the ultimate civil commitment.  Pet. at 11-12, and 15.

7    Habeas relief is not warranted here.  First, Petitioner

8    cannot challenge his 2006 conviction by way of the instant

9    federal habeas action because his prior conviction may be

10    regarded as conclusively valid:

11
12       [W]e hold that once a state conviction is no longer
         open to direct or collateral attack in its own right
13       because the defendant failed to pursue those remedies
         while they were available (or because the defendant did
14       so unsuccessfully), the conviction may be regarded as
         conclusively valid.
15

16    Lackawanna County District Attorney v. Coss, 532 U.S. 394, 403-04

17    (2001) (citation omitted).[2]  Because Petitioner has not shown

18    that any of his prior convictions is still open to direct or

19    collateral attack, he cannot challenge any of them here.

20    Accordingly, his claims that he would not have plead guilty in

21    2006 or that the 2006 conviction was a springboard to the SVP

22    determination cannot be the basis for federal habeas relief.

23    Second, Petitioner's claim that his indefinite detention is

24
25
26    _____
27       [2] The only exception to this rule is when a petitioner asserts
      denial of assistance of counsel in violation of the Sixth Amendment.
      Lackawanna, 532 U.S. at 404 (discussing "special status" of claims
28    under Gideon v. Wainwright, 372 U.S. 335 (1963)).  Here, Petitioner
      has not asserted that he was denied the assistance of counsel.

disproportionate to his 2006 crime is without merit.  His

detention is not punishment for his 2006 crime, and therefore his

detention cannot be disproportionate.  The civil detention was

imposed because he was adjudged an SVP, his 2006 conviction being

just one of the considerations the jury took into account.

   The state appellate court's rejection of these claims was

therefore reasonable and is entitled to AEDPA deference.  This

claim is DENIED.

## III. Sufficiency of the Evidence

   Petitioner asserts that there was insufficient evidence to

classify him as an SVP.  Specifically he alleges that the jury's

determination was not supported by evidence; the finding that he

had a mental illness was fabricated to keep him indefinitely

detained; Coles's and Updegrove's evaluations were invalid

because they were less thorough than those used by the defense's

psychologists; and the evaluation methods used by the DMH are

invalid.  Pet. at 2, 6-8.

   Petitioner's claims are wholly conclusory.  First, the

record flatly contradicts his claim that there was nothing to

support a finding that he was an SVP.  Petitioner's criminal

history and the evaluations by two psychologists provided

evidentiary support.

   Second, the record also flatly contradicts his claim that a

finding of mental illness was fabricated.  All four psychologists

diagnosed pedophilia and Petitioner has pointed to no evidence of

United States District Court
For the Northern District of California

17

United States District Court
For the Northern District of California

fabrication.

Third, Petitioner's claim that the prosecutor's psychologists' evaluations were not sufficiently thorough is entirely conclusory.  He says only that his psychologists used more tests and interviewed him more thoroughly.  He fails to point to specific evidence showing exactly how the prosecutor's psychologists' tests were not thorough and how those deficiencies rendered their evaluations invalid.

His fourth claim that the DMH evaluation methods are invalid is also conclusory and therefore fails to meet the specificity requirements of Mayle, 545 U.S. at 655.

The state court's rejection of these claims was therefore reasonable and is entitled to AEDPA deference.  These claims are DENIED.

IV.   Trial Errors

Petitioner claims that there were several trial errors: (A) perjured and biased testimony; (B) instructional error; (C) the improper exclusion of evidence; and (D) the improper admission of prejudicial evidence.[3]  Pet. at 6-7, 11, 12-13, and

---

[3] Petitioner also asserts that his rights were violated because he was denied access to the law library.  Pet. at 12.  The only evidence he cites is his request for a copy of the Constitution and Bill of Rights, to which the jail staff responded, "We do not have a law library."  Id., Ex. 6.  Petitioner fails to show precisely how this deprivation adversely affected his defense.  Also, at trial Petitioner had a copy of the Constitution, which of course included the Bill of Rights, which he marked as an exhibit and tried to enter into evidence.  Ans., Ex. J, Vol. 6 at 1189.  Finally, Faretta v. California, 422 U.S. 806 (1975), does not clearly establish a right to law library access for a self-representing criminal defendant.

15-16.

A.   Perjured and Biased Testimony

Petitioner asserts that Dr. Updegrove and Dr. Coles were dishonest about the percentage of people diagnosed with SVP out of the total number of persons they examine per year.  Pet. at 7. He further asserts that they were biased (and greedy) because they were paid employees of the DMH.  Id.

Habeas relief is not warranted here.  Petitioner alleges that Updegrove stated that he "referred 5% of people he examined to SVP trials . . . when in fact he referred 20%."  Id.  He also alleges that Dr. Coles testified that he "referred 3% of people he examined to SVP trial . . . when he actually referred 14%." Id.

Petitioner bases his percentages on DMH documents that give Coles's and Updegrove's evaluation outcome percentages.  Id., Exs. 3A and 3B.  These documents, however, do not provide a time frame within which the statistics can be evaluated.  For example, Updegrove was speaking of the evaluations he made between 2007 and 2009.  Ans., Ex. J, Vol. 5 at 917.  Petitioner's document, however, appears to cover a larger time frame.  Because the document does not contradict Updegrove's testimony, Petitioner has not shown that the testimony was false.

Kane v. Garcia Espitia, 126 S. Ct. 407, 408 (2005).  This claim is DENIED.

Petitioner also misstates the meaning of Coles's testimony. His "3%" was the percentage of findings based on the total number of persons referred state-wide, not those referred by Coles personally. Id., Vol. 4 at 805-06. Again, Petitioner fails to provide any evidentiary support for his claim that Coles and Updegrove presented false testimony.

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference. Accordingly, this claim is DENIED.

B.   Instructional Error

Petitioner asserts that the judge "made himself the highest law in the land!" when he gave the following standard jury instruction (CALCRIM No. 200): "You must follow the law as I explain it to you even if you disagree with it. If you believe the attorneys or Respondent's comments on the law conflict with my instructions, you must follow my instructions." Pet. at 11; Ans., Ex. J, Vol. 6 at 1208.

Habeas relief is not warranted here. First, it is not clear what constitutional violation Petitioner is asserting. Because his claim is conclusory and lacks detail, it fails to meet the specificity requirements of Mayle, 545 U.S. at 655. Second, insofar as Petitioner claims that the court's instruction violated due process, it is without merit. The trial court gave a standard instruction, one given to ensure that the jury applies the correct legal standard rather than whatever standard counsel

or witnesses have suggested is the correct one.  In no way then has Petitioner shown that this instruction so infected the entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

C.   Exclusion of Evidence

Petitioner asserts the court erred because he was barred from showing the jury a document regarding the recidivism rates of sex offenders.  Pet. at 12.  When Petitioner sought to introduce the document at trial, the trial court asked, "What is it?  What is the source or what is the title of it?"  Petitioner responded:

> I didn't have the first page on here. I forget what the exact title is. It is not just Ohio — it gives a National Department of Justice — it gives the recidivism rate from the reports they have. It is not just Ohio it is other states there. It is very important about the — it goes into a little about the constitution and so on here. It is very relevant to this case showing the recidivism rate, showing what studies use is a lot lower than what people think.

Ans., Ex. J, Vol. 6 at 1188.  The trial court excluded this evidence because it lacked a proper foundation and was hearsay.  Id. at 1190.  Though it was excluded as evidence, Petitioner was allowed to read the document to the jury.  Id., Ex. 5 at 1076-80.

The exclusion of evidence does not violate the due process

United States District Court
For the Northern District of California

clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quotation omitted).  The defendant, not the state, bears the burden to demonstrate such a violation.  Id. at 47.  "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, a reviewing court balances five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000).

Habeas relief is not warranted here.  None of the Chia factors weighs in Petitioner's favor.  First, the document had at

best only slight probative value.  Such statistics show a general

trend.  They do not indicate with any precision whether

Petitioner is likely to reoffend.  Second, the document was not

reliable.  Petitioner had no personal knowledge of how the

document was created or how the results were calculated.  For

this same reason, it could not be evaluated by the trier of fact.

The last two factors are not relevant.  The issue at trial was

whether Petitioner, based on the specific circumstances of his

case, was likely to reoffend, not whether, generally speaking,

sex offenders were likely to reoffend.

Furthermore, Petitioner's presentation of the evidence to

the jury renders moot any claim that the "exclusion" of the

evidence adversely affected his trial.

The state court's rejection of this claim was therefore

reasonable and is entitled to AEDPA deference.  Accordingly, this

claim is DENIED.

D.   Admission of Prejudicial Evidence

Petitioner claims that the trial court violated his due

process rights when it admitted (1) a confidential report from

1992, and (2) documentary evidence containing allegations of

sodomy and violence.[4]  Pet. at 12, 13-14, and 15-16.

---

[4] Petitioner alleges that "invalid evidence" was admitted.  The only example he gives is Updegrove's testimony, based on a 1992 report, that Petitioner was "virtually unable to function in the adult world."  Pet. at 15.  Petitioner has not shown why this evidence is invalid, or how its admission violated his federal constitutional rights.  The claim is DENIED.

United States District Court
For the Northern District of California

1.   Report

Prior to trial, Petitioner moved to exclude a 1992 report regarding whether Petitioner should be placed on supervised probation.  The trial court admitted the report:

> Mr. Nothnagel seeks to have that report excluded and not considered by the expert witnesses because he says that he was told that it was a confidential report. I don't believe that is the law.  In fact, the report was submitted to the Court to determine the eligibility as to whether Mr. Nothnagel was eligible to be placed on supervised probation.  It wasn't a report that was generated pursuant to a treatment plan — typically, if a psychologist is providing treatment, there are certain confidentialities that arise.  But in this case, there — this was not the purpose of the report. The report was to aid the Court in deciding whether Mr. Nothnagel should be placed on probation. Because it wasn't pursuant to a court-ordered treatment plan, there's no patient-psychologist privilege.

Ans., Ex. J, Vol. 4 at 615.  At trial, Petitioner objected to the 1992 report because he thought it was confidential.  Here, he claims that the report should have been updated by its preparer, as required by California Welfare and Institutions Code section 6603.

Habeas relief is not warranted here.  First, the report was not confidential, but rather was prepared for court use.  Second, the SVPA does not require that old evaluations be updated.  Rather, the statute merely allows the prosecutor to request that the DMH update its evaluations.  Cal. Welf. & Inst. Code § 6603(c)(1).  Furthermore, that section applies only to reports prepared under California Welfare and Institutions Code section

6601, not to reports regarding a person's eligibility for supervised probation.

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

2.   Documentary Evidence

The documents at issue here are part of the court file on Petitioner's 1991 offenses.  In 1992, Petitioner plead guilty to five counts of oral copulation with 11-year-old Cody.  According to the probation report, Cody stated in an interview that he engaged in mutual acts of oral copulation with Petitioner.  He also stated that one time Petitioner tied him up and ejaculated in his mouth.  Another time, Petitioner sodomized him and threatened to kill him if he told anyone.  Ans., Ex. A at 26.

At trial, the court admitted this documentary evidence, which includes his answers to a lie detector test, over Petitioner's objections:

> Well, basically, the law says that the existence of the
> predicate offenses, which are the [Cal. Penal Code §]
> 288 charges [for lewd and lascivious acts with person
> under the age of fourteen], and the details underlying
> the offenses may be established by multiple-level
> hearsay evidence, such as transcripts or preliminary
> hearings, trial, probation reports, sentencing reports,
> mental health evaluations, sometimes police reports.
> That's under Welfare and Institutions Code Section 6600
> Subsection (a) subsection (3), People versus Otto,
> O-T-T-O, 26 Cal.4th 200 at 208.  Those cases in — and
> that statute stands for the proposition that the
> defendant in a case such as this has no due process
> right to confront and cross-examine witnesses.
> Statements and police reports are used by the expert

25

> witnesses in determining whether the defendant is an
> SVP. Statements are admissible under the Welfare and
> Institutions Code Section 6600(a)(3) provided they have
> some basis of reliability.

Ans., Ex. J, Vol. at 752.

Here, Petitioner claims that the evidence should have been excluded as unreliable.  He offers nothing to support this, however, aside from conclusory allegations.  His claim, then, fails to meet the specificity requirements of <u>Mayle</u>, 545 U.S. at 655.  Also, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009).

Any claim that the admission of this evidence violated his rights under the confrontation clause or the rule against the admission of hearsay is without merit.  First, the Sixth Amendment's confrontation clause does not apply to civil commitment proceedings, at which only the protections of due process apply.  U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"); <u>Carty v. Nelson</u>, 426 F.3d 1064, 1073 (9th Cir. 2005).  Second, the Ninth Circuit has held that the rule in <u>People v. Otto</u>, 26 Cal. 4th 200 (2001), the California Supreme Court case under which the trial court admitted the hearsay evidence, sufficiently protects a person's

26

due process rights of confrontation.  Id. at 1074-75.

Furthermore, any claim that the state court erred in admitting the evidence under state law is not remediable on federal habeas review.  The state appellate court's ruling that the evidence was properly admitted under state law binds this federal habeas court.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Finally, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  Here, the jury could have made permissible inferences regarding Petitioner's criminal history.

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

V.    Sixth Amendment Claims

Petitioner claims that (A) standby and appellate counsel rendered ineffective assistance; and (B) the trial court violated his rights in various ways.

A.    Standby and Appellate Counsel

1.    Standby Counsel

Petitioner claims that his standby counsel was never present in court.  Even if he had a right to standby counsel, Petitioner has not detailed how standby counsel's absence adversely affected his defense.  The claim, then, fails to meet the specificity requirements of Mayle, 545 U.S. at 655.  Also, the appointment of

27

United States District Court
For the Northern District of California

standby counsel was for the benefit of the administration of justice, not to help Petitioner.  Courts appoint standby counsel "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." McKaskle v. Wiggins, 465 U.S. 168, 184 (1984).

The state appellate court's denial of this claim was therefore reasonable and is entitled to AEDPA deference. Accordingly, this claim is DENIED.

        2.   Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance by refusing to appeal any issues other than unfairness and unequal protection of the law.  (Pet. at 13.)[5]

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability

---

     [5] Petitioner's claim that California's First District Appellate Court refused to let him add his own brief or to discharge his appointed counsel, Pet. at 3, is DENIED.  Because the right to counsel on appeal is founded in the due process clause of the Fourteenth Amendment, rather than the Sixth Amendment right to counsel, "none of the Sixth Amendment's protections, including a criminal defendant's qualified right to choice of counsel, extends to a criminal appeal." Tamalini v. Stewart, 249 F.3d 895, 901 (9th Cir. 2001).

United States District Court
For the Northern District of California

that, but for counsel's unprofessional errors, he would have prevailed on appeal.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1045 (9th Cir. 1997); <u>Miller</u>, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason -- because he declined to raise a weak issue.  <u>Id.</u>

Habeas relief is not warranted here.  As discussed at length above, none of Petitioner's claims has merit.  Therefore, appellate counsel's failure to raise these claims on appeal cannot constitute ineffective assistance of counsel.

The state court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

B.   Trial Court

Petitioner claims that the trial court violated his Sixth Amendment rights by denying his requests (1) to change counsel; and (2) for the appointment of advisory counsel.

1.   Motion to Change Counsel

Petitioner claims that the trial court violated his Sixth Amendment rights when it denied his motion to change counsel.

29

United States District Court
For the Northern District of California

The relevant facts are as follows.  Petitioner was represented by
Kevin Robinson, a public defender.  Petitioner filed a motion to
change counsel.  He told the trial court that he objected to
Robinson because he would not allow Petitioner to present opening
or closing arguments or otherwise address the jury.  Robinson
responded that he told Petitioner that as long as he was
represented by counsel he could not address the jury in the ways
he suggested.  Robinson did say, however, that he told Petitioner
that he could address the jury through his testimony, if he took
the stand.  The trial court denied the motion to change counsel.
However, the trial court explained to Petitioner that when "being
represented by counsel, you have the right to testify, . . . tell
the jury what you'd like to have them hear and be told, but
counsel does conduct the proceedings and do make the arguments,
statements."  Ans., Ex. J. Vol. 2 at 281.  Subsequently
Petitioner signed a <u>Faretta</u> waiver to represent himself.  <u>Id.</u> at
290-929.

When a defendant voices a seemingly substantial complaint
about counsel, the trial judge should make a thorough inquiry
into the reasons for the defendant's dissatisfaction.  The
inquiry only need be as comprehensive as the circumstances
reasonably permit, however.  <u>King v. Rowland</u>, 977 F.2d 1354, 1357
(9th Cir. 1992).  In determining whether the trial judge should
have granted a motion for substitution of counsel, the reviewing
habeas court may consider the extent of the conflict, whether the

trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the motion to substitute counsel. Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005). The ultimate inquiry is whether the Petitioner's Sixth Amendment right to counsel was violated.  Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000).  In other words, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [the criminal defendant's] constitutional rights in that the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  Id. at 1026.

Habeas relief is not warranted here.  The record shows that the trial court's denial of the motion was reasonable:  the trial court inquired into the basis of Petitioner's motion, and assured him that Robinson provided correct legal advice.  That Robinson would not allow Petitioner to act in a way contrary to court procedure does not show that there was an impediment that resulted in an attorney-client relationship that fell short of that required by the Sixth Amendment.  Robinson informed his client that he could address the jury, but that he had to do so in a court-appropriate way.

The state court's rejection of this claim was therefore

reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

    2.   Appointment of Advisory Counsel

    Petitioner's claim that the trial court violated his Sixth Amendment rights by failing to appoint advisory counsel is DENIED.  There is no constitutional right to the appointment of advisory counsel.  United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir. 1994).  Petitioner has a right to represent himself or be represented by counsel and "[t]he failure of the trial court to give him a 'hybrid' representation to which he was not legally entitled did not violate his Sixth Amendment right to counsel."  Yokely v. Hedgepeth, 801 F. Supp. 3d 925, 945 (C.D. Cal. 2011).

    The state court's denial of this claim was therefore reasonable and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

CONCLUSION

    The state court's denial of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

    A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the

constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>,

529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of

appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent, and

close the file.

IT IS SO ORDERED.

DATED: February 2, 2016

_____
CLAUDIA WILKEN
United States District Judge